UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MIDWEST HEALTHPLAN, INC.,**

   **Plaintiff,**

Case No: 02-CV-71688
Honorable Denise Page Hood
United States District Judge

v.

**NATIONAL MEDICAL HEALTH
CARD SYSTEMS, INC.,**

   **Defendant**.

_____

### MEMORANDUM OPINION & ORDER DENYING
### DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
### & GRANTING IN PART AND DENYING IN PART
### PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

**I. Introduction**

  This matter is before the Court on Defendant's Motion for Partial Summary Judgment and Plaintiff's Cross Motion for Partial Summary Judgment. Both parties have filed responsive and reply briefs relative to each partially dispositive motion. The parties raise several issues for the Court's review. Most of the issues stem from a dispute over certain terms in the Prescription Drug Program Agreement (PDA) and associated documents between the parties. The issues before the Court are as follows: (1) the definition of "fees" in the PDA under §3.1(c); (2) Plaintiff's alleged injury due to Defendant's payments to pharmacies; (3) the definition of "HC MAC" (Health Card/Care - Maximum Allowable Cost) in the PDA; (4) the method of calculating generic drug pricing; (5) the application of the generic drug formula; and (6) Plaintiff's breach of fiduciary duty claim.

  Upon hearing oral argument and reviewing the issues presented in the parties' pleadings, the Court's finds that Defendant's Motion for Partial Summary Judgment is DENIED; and Plaintiff's

Cross Motion for Partial Summary Judgment is GRANTED IN PART AND DENIED IN PART.

## II. Statement of Facts

Plaintiff is a Medicaid Health Maintenance Organization (HMO), which provides medical benefits to indigent persons in southeastern Michigan. Plaintiff entered into an agreement with the Michigan Department of Community Health (MDCH) to arrange for the provision of health care services to certain persons who qualified for medical assistance under the Medicaid Program as part of the MDCH Comprehensive Health Care Program. *(Exhibit 1 of Defendant's Motion and Plaintiff's Cross Motion for Partial Summary Judgment (hereinafter PSJ Motions), PDA, pg. 1, Recital 2).*

Defendant "is in the business of providing, managing and administering prescription drug programs, including the maintenance of a nationwide network of retail pharmacies, claims administration, mail service dispensing and delivery of prescription drugs, production of prescription drug utilization and management reports and other pharmacy management services." *(Id. at Recital 1).*

On July 1, 1999, Plaintiff and Defendant entered into the PDA whereby the parties agreed that Defendant would "provide a prescription drug program for [the Plaintiff] and [would] provide, through its network of retail pharmacies, prescription drug services for persons who qualify for medical assistance under the Medicaid Program who are members of [the Plaintiff] HMO." *(Id. at Recital 4).* Among the many prescription drug management responsibilities Defendant was contractually obligated to perform was to reimburse participating pharmacies when they, the pharmacies, filled a prescription for a covered drug of a member of Plaintiff HMO. *(Id. at pg. 4, Recital 3.1(c)).* The reimbursement amounts were to be in accordance with the pricing terms set forth in Exhibit B of the PDA. Defendant was also to charge Plaintiff for its services in accordance

with the same set of pricing terms.

Although there are several issues in dispute between the parties, the crux of Plaintiff's claim against Defendant is based upon Plaintiff's contention that Defendant underpaid (failed to fully reimburse) the participating pharmacies and overcharged Plaintiff for Defendant's prescriptions management services. Plaintiff alleges that both of these acts resulted in a large surplus ("retention spread") of money in Defendant's hands amounting to over 2 million dollars.

With the exception of Plaintiff's breach of fiduciary duty claim and Defendant's assertion that Plaintiff has incurred no damages relative to Defendant's payments to participating pharmacies, the other collateral issues in dispute are directly related to contract interpretation and provide the primary basis for the Partial Summary Judgment Motions presently before the Court.

### III. Standard of Review

#### A. Generally

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 251-252 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Cortp. v. Catrett,* 477 U.S. 317, 322 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the

non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See, Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 474 U.S. 574, 587 (1986).

To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. It is not sufficient for the nonmoving party to merely "show that there is some metaphysical doubt as to the material facts. *Id. (quoting Matsushita*, 475 U.S. at 586). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988). Disputed facts are material only if they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Id.*

### III. Applicable Law & Analysis

#### A. Contract Interpretation

The posture of this case requires the Court to review the parties' interpretation of the PDA. In the construction or interpretation of contracts the primary purpose is to determine the intention

of the parties. *Reliant Energy Services, Inc. v. Enron Canada Corp.,* 349 F.3d 816, 821 (5th Cir. 2003). The initial question of whether the contractual language is ambiguous is a question of law. *NILAC Intern. Marketing Group v. Ameritech Services Inc.,* 362 F.3d 354, 358 (6th Cir. 2004); *Port Huton Ed. Ass'n v. Port Huron Area School Dist.,* 452 Mich. 309, 323; 550 N.W.2d 228 (1996). If the contractual language is clear and unambiguous, its meaning is a question of law properly determined by this Court. *Id.; Sault Ste. Marie Tribe of Chippewa Indians v. Engler,* 146 F.3d 367, 373 (6th Cir. 1998). Where the contractual language is unclear or susceptible to multiple meanings, interpretation is a question of fact. *Id.*

In making such a determination, a district court is counseled to read the contract as a whole, and to give the contract language its ordinary and natural meaning. *See Comerica Bank v. Lexington Ins. Co.,* F.3d 939, 942 (6th Cir. 1993). This Court's role in construing the terms of a contract is not unqualified, however. "Where [a contract's] meaning is obscure and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury under proper instructions." *City of Wyandotte v. Consolidated Rail Corp.,* 262 F.3d 581, 585 (6th Cir. 2001). However, Michigan law permits extrinsic evidence, presumptions and inferences to be received as an aid to contract interpretation in two situations. Where a contract is ambiguous on its face, extrinsic evidence may be admitted to indicate the parties' intent. *Boyer v. Douglas Components Corp.,* 989 F.2d 999, 1005 (6th Cir. 1993); *see also, In re White Farm Equipment Co.,* 788 F.2d 1186, 1193 (6th Cir. 1986). Where the contract is not ambiguous on its face, extrinsic evidence may be admitted to show the existence of an ambiguity and to demonstrate the parties' actual intent. *Id.* When presented with a contractual dispute, a court must determine what the parties' agreement is and enforce it. *G & A Inc. v. Nahra,* 204 Mich. App. 329, 330; 514 N.W.2d

255 (1994). Contractual language is to be given its plain and ordinary meaning, and technical and constrained constructions are to be avoided. *Id.* at 331.

### 1. Contract Interpretation of "Fee"

Contract provision 3.1(c) of the PDA states as follows:

<u>Reimbursement of Participating Pharmacies</u>  NMHCS [Defendant] shall reimburse each Participating Pharmacy which fills a prescription for a Covered Drug for a Member in accordance with the <u>*fees*</u> set forth on Exhibit B, less the Copayment, if any, and bill the HMO [Plaintiff] who operates the Plan in which such Member is enrolled for such amount.

*(PSJ Motions, PDA, pg. 1, Recital 2, emphasis added).* Exhibit B of the PDA states in pertinent part:

**RETAIL**

**Brand:** AWP[1] - 13.5% or Usual & Customary (whichever is lower)

**Generic:** HC MAC[2] or AWP - 50% (whichever is lower)

**Dispensing Fee-Brand:** $1.75 for each prescription filled at the Retail Pharmacy

**Dispensing Fee-Generic:** $2.00 for each prescription filled at the Retail Pharmacy

<u>Mail Service</u>

**Brand:** AWP - 13.5% or Usual & Customary (whichever is lower)

**Generic:** HC MAC or AWP - 50% (whichever is lower)

**Dispensing Fee-Brand:** $1.75 for each prescription filled at the Retail Pharmacy

**Dispensing Fee-Generic:** $2.00 for each prescription filled at the Retail Pharmacy

<u>**Administrative Fee:**</u> **$.25**

---

[1]Average Wholesale Price (AWP)

[2]Health Card (Care) Maximum Allowable Cost (HC MAC)

**Formulary Rebate:*** **75% to be paid to Midwest Health Plan, Inc. on a quarterly basis.**

**25% to be retained by NMHCS.**

**Therapeutic Interchange:    To be determined.**

*Id.*

Defendant asserts that the term "fees" under the pricing itemization in Exhibit B of the PDA only applies to "Dispensing Fees." Defendant argues that if the Court reads the entire PDA coupled with the parties' course of performance, it must conclude that there is no genuine issue of material fact that the term "fees" unambiguously means "dispensing fees." Plaintiff maintains that the term "fees" was meant to include all of the amounts the participating pharmacies were entitled to receive for filling a prescription, and not just the "dispensing fees" as Defendant claims. Plaintiff contends that interpreting the term "fees" as Defendant suggests would be inconsistent with other provisions of the PDA and would result in an "absurd" outcome when applying the terms of the PDA.

The interpretation of the "fee" contract term is significant because Plaintiff relies upon 3.1(c) of the PDA to substantiate its claim that Defendant did not fully reimburse the "fees" owed the participating pharmacies and kept the balance of the "fees" owed to the pharmacies for itself. Plaintiff paid these "fees" to Defendant in order for Defendant to disperse the "fees" as reimbursement to the participating pharmacies. Plaintiff asserts that Defendant's act of only reimbursing the participating pharmacies "dispensing fees" caused these pharmacies to be under-compensated.  As a result, Defendant allegedly reaped a windfall, which in turn led to an overpayment by Plaintiff to Defendant.

Plaintiff's Amended Complaint states that "Defendant was not entitled to receive any fees from Plaintiff beyond the $.25 per Member/per month Management Fee." *(Plaintiff's Amended*

7

*Complaint, ¶16)*. Therefore, Plaintiff is seeking from Defendant the difference between the amount Defendant collected from Plaintiff (i.e., $.25 per member/per month) and the "fees" actually reimbursed the participating pharmacies. Plaintiff calculates this amount to exceed 2 million dollars. Defendant counters by arguing that the only "fees" it was obligated to reimburse the participating pharmacies were the "dispensing fees" since "fees" means "dispensing fees," according to Defendant's interpretation of the contract term. Consequently, Defendant did not under-compensate the pharmacies and did not overcharge the Plaintiff. Accordingly, Defendant argues that Plaintiff is not entitled to the damages it seeks in this lawsuit.

The Court finds that the term "fees" is unambiguous and fully correlates with Plaintiff's interpretation of the contract term. Plaintiff cites several reasons why "fees" in 3.1(c) of the PDA means all of the fees to which the participating pharmacies were entitled, and the Court agrees.

First, if the term "fees" was meant to only reference "dispensing fees" as Defendant argues, then "dispensing fee" would have been the language set forth in the Recital. "Administrative Fees" as well as "Dispensing Fees" are indicated in Exhibit B of the PDA. The fact that the term in 3.1(c) simply states "fees" supports the unambiguous interpretation that "fees" references any fees indicated in Exhibit B of the PDA. Second, the dictionary term for "fee" not only means "a fixed charge" as Defendant argues, but it also means "a charge for a professional service." *Webster's Ninth New Collegiate Dictionary, pg. 454.* This alternative definition of "fee" would include the administrative fee articulated in Exhibit B, as that fee is the amount Defendant was being paid to manage or "administer" the prescription drug program. Third, upon reviewing the PDA, and for the reasons cited by the Plaintiff, the Court does not find Defendant's interpretation of the "fee" term to be consistent with the other terms of the PDA. *(Plaintiff's Cross Motion for PSJ, pp. 12-19; Plaintiff's*

8

*Reply Brief in Support of Cross Motion for PSJ, pp. 3-4)*.

For these reasons, the Court grants Plaintiff's Cross Motion for Partial Summary Disposition as to the contract interpretation of "fees" in 3.1(c) of the PDA, and denies Defendant's Motion for Partial Summary Disposition as to this issue.

### 2. Contract Interpretation of "HC MAC"

Defendant asserts that "HC MAC" unambiguously does not mean "Michigan Medicaid Mac," and therefore, summary judgment should be granted in accordance with Defendant's interpretation of the term. Plaintiff claims that "HC MAC" means "Michigan Medicaid Mac." "HC MAC" stands for Health Card (Care) Maximum Allowable Costs. Essentially, the term refers to a list of approved prescription drug prices. Defendant argues that the "HC MAC" price list differs from the "Michigan Medicaid Mac" price list. This issue is significant because the price list for generic prescription drugs factors into the amount the participating pharmacies were to be reimbursed by Defendant. Defendant cites the deposition testimony of Judith Call, a former vice president of Plaintiff and the deposition testimony of Craig S. Stern, one of Defendant's experts, to support its position that "HC MAC" does not mean "Michigan Medicaid Mac." *(Defendant's Motion for Partial Summary Judgment, Exhibits 5 & 11)*. Plaintiff cites the deposition testimony of Mary Casale, Defendant's former vice president, and the deposition testimony of Dr. Marshall Gene Katz, the medical director for the Plaintiff, for the purpose of supporting its position that "HC MAC" is "Michigan Medicaid Mac." *(Plaintiff's Cross Motion for PSJ, Exhibits 3 & 8)*. Since the "HC MAC" term is not defined within the text of the PDA and the parties have presented competing and equally persuasive extrinsic evidence in an effort to support their respective positions, the Court finds that the issue of whether "HC MAC" is "Michigan Medicaid Mac" is a question of fact that should be

presented for a jury to decide. For these reasons, the Court denies Defendant's Motion for Partial Summary Disposition as to this issue.

### 3. Application of the Generic Drug Pricing Formula

Defendant contends that the generic drug pricing formula indicated in Exhibit B of the PDA (HC MAC or AWP - 50% (whichever is lower)) was not to be applied on a prescription by prescription basis, but rather was to be applied in the aggregate to all generic drugs. Plaintiff argues that the charges for generic drugs were to be calculated on a claim by claim basis. Upon the Court's review of Exhibit B of the PDA, the Court finds Defendant's interpretation as to whether charges for generic drugs were to be calculated on an individual or aggregate basis is a constrained construction. It is inconsistent with the plain language of Exhibit B, and unpersuasive in light of the overwhelming extrinsic evidence which supports Plaintiff's position that the charges for generic drugs were to be calculated on a claim by claim basis.

Despite Defendant's efforts, the Court finds that Defendant is unable to establish a genuine issue of material fact disputing that charges for generic prescription drugs were to be calculated on a claim by claim basis. Mary Casale, Defendant's former vice president, testified that the PDA indicated that generic drugs should be priced on a prescription by prescription basis. *(Plaintiff's Cross Motion for PSJ, Exhibit 3, pg. 33).* Plaintiff's former vice president, Judith Call, testified that she understood the PDA to require that Defendant calculate the amount due for generic drugs on a "per prescription" basis. *(Id. at Exhibit 2, pg. 26).* Defendant referenced its obligations under the PDA in terms of a "per prescription retail price fee." *(Id. at Exhibit 21, ¶¶6-7 and Exhibit 10, pp. 9-10).* Neither the PDA nor the invoicing set forth any language regarding the "effective discount rate," which Defendant relies upon as the theory upon which charges for generic prescription drugs is

based. *(Plaintiff's Reply Brief in Support of Cross Motion for PSJ, Exhibit 1, ¶11)*. Defendant admits that the calculation of "brand" prescription drugs is done on a claim by claim basis; and there is no language in the text of Exhibit B which indicates that brand and generic prescription drug charges should be calculated differently. *(Id. at Exhibit 5, pp. 71-74, 92, 98-99; Exhibit 6, pg. 86)*.

The Court finds there is no genuine issue of material fact relative to the issue of whether generic prescription drug pricing charges should be calculated on a claim by claim basis. For these reasons, the Court grants Plaintiff's Cross Motion for Partial Summary Judgment, finding that it was the parties' intent for the charges for generic prescription drugs to be calculated on a claim by claim basis. Defendant's Motion for Partial Summary Disposition as to this issue is denied.

### 4. Change in Generic Drug Formula Application

Defendant's CEO, Tery Baskin, drafted a letter on or about October 18, 2001. *(PSJ Motions, Exhibits 10 & 19)*. Defendant asserts the letter modifies the payment formula for generic drugs. Plaintiff contends the letter did not change how the formula on Exhibit B of the PDA was to be applied. The pertinent language is as follows:

> Effective October 13, 2001, we replaced the MAC list with the Michigan Medicaid MAC list and instituted the exceptions per Dr. Katz' letter dated October 2, 2001. Any generic drugs that are not on the list will be discontinued at AWP minus 30%

*Id.*

The issues surrounding this portion of the letter are directly tied to the "MAC" and "Michigan Medicaid Mac" lists. Since the Court has already ruled that these issues are questions of fact for a jury to decide, the Court likewise finds there is a genuine issue of fact regarding the contract interpretation of the letter. The parties have presented competing and persuasive arguments in support of their respective positions. For these reasons, the Court denies Defendant's

11

Motion for Partial Summary Judgment, finding there is a question of fact regarding any alleged implemented changes in the generic drug calculation formula.

### B. Plaintiff's Damages

Defendant contends Plaintiff has failed to show that it has been injured as a result of Defendant's alleged improper actions in failing to properly reimburse the participating pharmacies. Defendant asserts Plaintiff cannot maintain a viable cause of action unless it can demonstrate that it suffered a loss as a result of Defendant's conduct. Plaintiff maintains it has suffered as a result of Defendant's retention spread (i.e., Defendant's failure to fully reimburse the participating pharmacies and pocketing the difference) in the following manner: (1) this has negatively affected Plaintiff's relationship with the participating pharmacies; (2) Plaintiff did not get the benefit of the bargain, "which was to receive the services Defendant agreed to provide for $.25 per member per month and to have the pharmacies reimbursed at the rates identified on Exhibit B;" (3) Defendant breached its fiduciary duty which was owed to the Plaintiff; (4) Plaintiff suffers from a potential loss of subscribers; and (5) the contract was breached. *(Plaintiff's Cross Motion for PSJ, pp. 19-21)*.

The Court finds that the issue of whether Plaintiff has sustained any damages as a result of Defendant's alleged actions raises a material issue of genuine fact for a jury to decide. For these reasons, the Court denies Plaintiff's Cross Motion for Partial Summary Judgment and Defendant's Motion for Partial Summary Disposition as to this issue.

### C. Breach of Fiduciary Duty

#### 1. Fiduciary Duty Generally

A fiduciary duty arises out of the relation subsisting between two persons of such a character

that each must repose trust and confidence in the other and must exercise a corresponding degree of fairness and good faith. *Portage Aluminum Co. v. Kentwood National Bank,* 106 Mich. App. 290, 294; 307 N.W.2d 761 (1981). A fiduciary owes a duty of good faith to his principal and is not permitted to act for his private advantage or otherwise contrary to the interests of his beneficiary or principal in matters affecting the fiduciary relationship. *Central Cartage v. Fewless,* 232 Mich. App. 517, 524; 591 N.W.2d 422 (1998).

> Black's Law Dictionary defines "fiduciary relationship" as:
>
> A relationship in which one person is under a duty to act for the benefit of the other on matters within the scope of the relationship. Fiduciary relationships–such as trustee-beneficiary, guardian-ward, agent-principal, and attorney-client–require the highest duty of care. Fiduciary relationships usually arise in one of four situations: (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer.–Also termed *fiduciary relation; confidential relationship.*

*Black's Law Dictionary* 640 (7th ed.1999).

Agency is defined as the fiduciary relation which results from the manifestation of consent by one person or entity to another that the other shall act on his or its behalf and subject to his or its control, and consent by the other so to act. *Restatement Second of Agency, § 2 (1958)*. Section 13 of the Restatement (Second) of Agency (1958) defines the fiduciary duties arising out of an agency relationship: "An agent is a fiduciary with respect to matters within the scope of his agency." Where a contract exists defining the scope of the principal-agent relationship, a limited agency relationship arises. *Fulcrum Financial Partners v. Meridian Leasing Corp.,* 230 F.3d 1004, 1012-13 (7th Cir. 2000).

### a. Control

Defendant asserts Plaintiff is required to plead and prove that it had control over Defendant pursuant to the terms of the PDA in order for Plaintiff to set forth a valid breach of fiduciary duty claim. The Court disagrees. As set forth in the case law and secondary resource text above, fiduciary relationships can arise in several different situations. Certainly, when the principle assumes control and responsibility over the agent, that is an instance when a fiduciary relationship may result. However, a fiduciary relationship also exists when one person or entity has a duty to act for another on matters falling within the scope of the relationship. *Melynchenko v. Clay,* 152 Mich. App. 193, 197; 393 N.W.2d 589 (1986). Agency is defined as "a fiduciary relationship created by express or implied contract or by law, in which one party (the agent) may act on behalf of another party (the principal) and bind that other party by actions or words." *Breighner v. Michigan High School Athletic Association.,* 255 Mich. App. 567; 662 N.W.2d 413 (2003). In this case, the PDA requires that Defendant pay the participating pharmacies' claims on Plaintiff's behalf as the manager of the prescription benefits program.

The Court also disagrees with Defendant's assertion that no aspect of control was alleged in Plaintiff's First Amended Complaint relative to the breach of fiduciary claim. Upon the Court's review of Plaintiff's First Amended Complaint, it finds that sufficient allegations of control over the Defendant are stated in ¶¶6, 9. These paragraphs indicate Plaintiff's control over Defendant with respect to the type of prescriptions that are to be provided to the participating pharmacies and with respect to which pharmacies will participate in the prescription benefit program under the PDA. These areas of control specifically impact what pharmacies Defendant is permitted to do business with and what prescription drug benefits Defendant can offer to Plaintiff's members. More details

regarding these aspects of control are set forth in the PDA which is an integral part of the First Amended Complaint. *(See, §1.1(c), (f) & (o); §2.1; §,3.1(a),(b) & (d); and §4.2 of PDA).*

For these reasons, the Court finds that control is not necessarily required to create a fiduciary relationship between the parties. The Court further finds that Plaintiff has adequately established a genuine issue of material fact relative to the issue of control in the context of a breach of fiduciary claim.

### b. Relationship Between Plaintiff and Third Parties

Defendant argues Plaintiff has failed to plead or prove that Defendant had the power to alter the contractual relations between Midwest and third parties. Defendant and Plaintiff agree that "a characteristic of an agent is that he is a business representative. His function is to bring about, modify, accept performance of, or terminate contractual obligations between his principal and third persons." *Uniprop Inc., v. Morganroth,* 260 Mich. App. 442, 448; 678 N.W.2d 638 (2004). Therefore, by Defendant's own admission, although altering Plaintiff's legal relationships with third parties is a characteristic of an agent, it is not the only characteristic of an agent. Certainly, Defendant's business relationship with the participating pharmacies under the PDA will *affect* Plaintiff's relationship with those third party pharmacies. Defendant is the conduit between the pharmacies and Plaintiff. Defendant's management of the prescription benefit program relative to its reimbursements to the participating pharmacies and its service to Plaintiff's members directly affects Plaintiff's relationships with those third parties. This relationship effect is also alleged in §§8-12 and 16 of Plaintiff's First Amended Complaint.

For these reasons, the Court finds a genuine issue of fact has been established regarding the

15

connection between Defendant's actions and Plaintiff's relationship with the participating pharmacies, Plaintiff's subscribers or other third parties, which could give rise to a breach of fiduciary claim.

### c. Independent Contractor

The parties agree that Defendant is an independent contractor. However, that categorization does not preclude Defendant from also being an agent and therefore subject to some degree of control by the principal and accountability to the principal within the parameters of the PDA. *Restatement (Second) of Agency §2 (1958)*. Therefore, Defendant's independent contractor status does not bar the existence of a fiduciary relationship between Plaintiff and Defendant in this case.

The Court finds that there is a genuine issue of material fact relative Plaintiff's breach of fiduciary duty claim, the Court likewise finds that Plaintiff is not entitled to summary judgment on this issue. Accordingly, Defendant's Motion and Plaintiff's Cross Motion for Partial Summary Judgment are denied as to Plaintiff's breach of fiduciary claim.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Defendant's Motion for Partial Summary Judgment. The Court also grants Plaintiff's Cross Motion for Partial Summary Judgment in part and denies it in part. Plaintiff's Cross Motion for Partial Summary Judgment is granted relative to the issues regarding "fees" and the claim by claim issues as it relates to calculating charges for generic prescription drugs. Plaintiff's Cross Motion is denied as it relates to Plaintiff's damages and its breach of fiduciary claim.

Accordingly,

IT IS HEREBY ORDERED that Defendants's Motion for Partial Summary Judgment **[Doc. 34-1, filed July 18, 2003]** is **DENIED.**

IT IS FURTHER ORDERED that Plaintiff's Cross Motion for Partial Summary Judgment **[Doc. 49-1, filed September 8, 2003]** is **GRANTED IN PART AND DENIED IN PART.**

       /s/ Denise Page Hood
HONORABLE DENISE PAGE HOOD
UNITED STATES DISTRICT COURT

Dated: May 24, 2005